IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

APRIL WYMER,

                    Plaintiff,

    v.                                       OPINION and ORDER

FRANK BISIGNAGO,
Commissioner of Social Security,[1]                    24-cv-258-wmc

                    Defendant.

---

Plaintiff April Wymer seeks judicial review of the final decision of the Commissioner of Social Security, finding that Wymer was not disabled within the meaning of the Social Security Act. Specifically, Wymer argues that the Administrative Law Judge ("ALJ") erred by concluding that she could manage a limited range of light work despite various severe physical impairments and mild mental limitations. However, the court must affirm the Commissioner's decision because the ALJ adequately explained his findings, which are supported by substantial evidence in the record. The court is further confident that the outcome would not be different on remand.

BACKGROUND

Wymer originally applied for disability insurance benefits ("SSDI") on June 24, 2021, then for supplemental security income ("SSI") on March 20, 2023, each time alleging disability due to inflammatory arthritis, chronic obstructive pulmonary disease ("COPD"), obesity, and

---

[1] The court has substituted the name of Martin O'Malley for that of the current Commissioner, Frank Bisignago, pursuant to Federal Rule of Civil Procedure 25(d).

chronic kidney disease, beginning on January 28, 2021, when she was 43 years old.  (AR 18.)[2]
Wymer's medical records confirm that she has experienced numerous symptoms due to long-
standing rheumatoid arthritis ("RA"), for which she has alternated taking methotrexate,
prednisone, and multiple intravenous and injectable biologic medications since 1999 (AR 842),
including for:  right knee pain and swelling (AR 609, 611, 650-51, 659, 664-65); back pain
(AR 601, 659-61); hand pain (AR 659, 919); and bilateral foot pain (AR 649, 654, 919).

After the local disability agency denied her claim initially and on reconsideration,
Wymer requested an administrative hearing, which was initially held via telephone on
September 14, 2023, and continued in a supplemental hearing on November 22, 2023, before
ALJ Gary Freyberg.  (AR 18.)  Represented by counsel, Wymer testified at the first hearing
about her subjective symptoms and daily activities, which are limited to using her phone,
watching television, shopping twice a month, light cooking and housekeeping, and weekly
bingo with her mother.  (AR 25, 99-105.)  More specifically, she testified that pain and swelling
in her feet, ankles, and back prevent her from standing more than 30 minutes, sitting more
than three hours, and walking more than two hours at a time.  (AR 105-07.)  Wymer further
described experiencing cramping in her feet, hips, and knees once or twice a week, which causes
those joints to "go out" and a loss of balance.  (AR 110-12.)  She also described the following
trouble with her hands:  they cramp up if she tries to grip a pen or stylus used for crafts more
than 20-30 minutes at a time; she cannot type; and she has difficulty closing her hands on
most days.  (AR 108-10.)  Finally, Wymer testified that she suffers from "minor" anxiety when

---

[2] Record cites in this opinion are to the Bates-stamped page numbers in the administrative record
("AR") located at dkt. #4.

she is around strangers, for which she does not receive treatment apart from taking sertraline. (AR 115-16.)

In response to the ALJ's hypothetical about an individual capable of standing or walking for up to four hours per eight-hour day, Vocational Expert ("VE") Jacquelyn Wenkman testified at both hearings over the objection of plaintiff's counsel, that such an individual would be able to perform representative jobs available in the national economy as a routing or mail clerk. Specifically, plaintiff's counsel questioned the sit/stand requirements for certain jobs at the light exertional level and argued that Wenkman used unreliable methods for estimating the number of jobs that an individual with Wymer's limitations would be able to perform.[3] (AR 29, 46-, 117-28.)

In a January 23, 2024 decision, ALJ Gary Freyberg found plaintiff Wymer not disabled. (AR 18-31.) Even so, the ALJ found that Wymer had the following severe impairments: (1) inflammatory arthritis; (2) COPD; (3) obesity; and (4) chronic kidney disease. (AR 21.) With these impairments, the ALJ further found that Wymer had the residual functional capacity ("RFC") to perform work at the light level of exertion with the following, additional physical limitations: (1) she can never climb ladders, ropes, or scaffolds; (2) she can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl; and (3) she can frequently handle and finger bilaterally. (AR 24.) More specifically, with respect to walking and standing, the ALJ found persuasive the state agency physical assessments completed by Dr. Mina Khorshidi on February 1, 2022, and Dr. Marc Young on December 29, 2022, both of whom determined that Wymer could perform a reduced range of light work with standing/walking up to four

---

[3] The VE's testimony and Wymer's counsel's objections are discussed in more detail in the opinion section below.

hours and sitting up to six hours in an eighth-hour workday.  (AR 27.)  The ALJ further relied

on the assessments of state agency psychologists Jason Kocina and John Warren in finding that

Wymer suffered from the non-severe impairment of depression, which resulted in no more than

mild limitations in four broad functional areas used to evaluate mental disorders (the

"paragraph B criteria").  (AR 21-22.)

Overruling the objections that Wymer's counsel raised at both hearings and in a brief

filed between those hearings, the ALJ relied on the VE's testimony in concluding that Wymer

had no past relevant work but could perform other jobs available in significant numbers in the

national economy, including as a routing or mail clerk.  (AR 29.)

The Appeals Council denied Wymer's request for review on March 13, 2024, so the

ALJ's decision became the final decision of the Commissioner.  (AR 1.)


OPINION

On review, the question before this court is whether the ALJ's decision is supported by

"sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S.

Ct. 1148, 1154 (2019).  This standard requires only "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."  *Id*.  Reviewing courts may not

"reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or

substitute our judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473

(7th Cir. 2022).  "Rather, this court asks whether the ALJ's decision "reflects an adequate

logical bridge from the evidence to the conclusions." *Id*. (quoting *Gedatus v. Saul*, 994 F.3d

893, 900 (7th Cir. 2021)).  Here, Wymer contends that the ALJ's decision was not supported

by substantial evidence because the ALJ erred in three areas:  (1) evaluating Wymer's subjective

symptoms; (2) assessing Wymer's mental limitations; and (3) relying on the opinion of the VE. The court addresses each of these arguments below.

## I.  Subjective Symptoms

Wymer challenges the ALJ's refusal to credit fully her subjective reports of pain, swelling, fatigue, and abnormal gait associated with her RA, and how these symptoms limit her.  These reported symptoms include:  standing for no more than an hour; gripping a writing instrument for only 20-30 minutes; and losing her balance two to three times a week.  Wymer argues that these self-reported limitations make her incapable of performing the reduced range of light work in the ALJ's RFC assessment, which limits her to four hours of walking/standing in an eight-hour workday.

Under the social security regulations ("SSRs"), the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  SSR 16-3p, at *9.  If that standard is met, reviewing courts "will overturn an ALJ's decision to discredit a claimant's alleged symptoms *only if* the decision is 'patently wrong,' meaning it lacks explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (emphasis added) (quoting *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)).  In particular, a "credibility determination lacks support when it relies on inferences that are not logically based on specific findings and evidence." *Id*.  However, not *all* of the ALJ's reasons for discounting a claimant's subjective complaints need survive scrutiny so long as some of them do. *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011).

Here, the ALJ's primary reason for rejecting Wymer's subjective reports of pain and limitations were inconsistent with clinical findings that showed mostly normal functioning and strength, as well as stable, well-controlled, and even improving RA symptoms in June 2021 (AR 26, 631-33), August 2021 (AR 840-43), May 2023 (AR 1071-72), and July 2023 (AR 27, 1067-71).   Specifically, these clinical findings contradict Wymer's self-reported, extreme functional limitations.  After providing a detailed analysis of the medical evidence and Wymer's self-reported symptoms, functional limitations, and activities (AR 25-27), therefore, the ALJ adopted an RFC limiting Wymer to a reduced range of light work with specific, additional restrictions to account for her severe impairments and subjective reported symptoms.

Wymer argues that she still reported pain even when her RA was stable with treatment, noting that (1) her symptoms waxed and waned, and (2) she had to change medications due to complications.  However, plaintiff has not identified any significant medical findings that the ALJ ignored.  To the contrary, the ALJ explicitly acknowledged plaintiff's medical history and documented her complaints of pain and other symptoms, but he simply did not assign the same significance to this evidence as Wymer does.  Even if Wymer has shown that there is room for disagreement about the severity of her symptoms, the ALJ could reasonably conclude from the record before him that the *objective* medical evidence was not consistent with plaintiff's *subjective* reports of disabling symptoms.  *See Beaver v. Kijakazi*, No. 20-cv-1003, 2022 WL 601909, at *7-8 (W.D. Wis. Mar. 1, 2022) (finding similarly where "the ALJ specifically addressed all the evidence that plaintiff points out" but "simply did not assign the significance to it that plaintiff prefers").

Wymer also takes issue with the ALJ's additional finding that she never had surgery, used a TENS unit, or underwent physical therapy (*see* AR 27), arguing that none of these

6

treatments were ever recommended by her physicians or are even usual and effective treatments for RA. While Wymer raises a fair point, even if the ALJ erred in citing her lack of such treatments as *one* reason for discounting the severity of her subjective complaints, he provided other reasons supported by substantial evidence in the record already discussed above. Accordingly, Wymer has not shown that the ALJ committed reversible error in evaluating her subjective symptoms.

## II. Mental Impairments

Wymer next argues that the ALJ failed to consider or account for her mild mental limitations in his RFC assessment. When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment. 20 C.F.R. § 404.1523; *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). Specifically, Wymer contends that the ALJ did not consider her past allegations of fatigue, weight gain, difficulties handling stress, and having anxiety around groups of people for which she takes medication. (*E.g.*, AR 115-16, 450-51, 601-06.) Contrary to Wymer's contention, the ALJ explicitly considered her mild mental limitations but found that they would not impact her ability to work based on: the normal findings in her January 2022 consultative psychological evaluation; her ability to socialize, play bingo, and generally care for herself; her lack of psychiatric treatment and hospitalization; the general absence of significant mental complaints in the medical record (*see, e.g.*, AR 634, 647, 839, 896, 1067, 1134); and the unrebutted opinions from the state psychological consultants (*see* AR 139-41, 150), who also considered Wymer's allegations of anxiety and depression but found no more than mild mental limitations. (AR 21-23.)

Moreover, the burden is on plaintiff Wymer to identify additional, specific restrictions supported by the record that the ALJ should have included but did not. *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). Here, Wymer does not articulate what additional restrictions the ALJ should have assigned or explain why findings of mild mental limitations would prevent her from doing the work the ALJ found her capable of performing. At most, Wymer *suggests* that unspecified limitations for simple work, no fast-paced production, and managing stress may be appropriate without citing substantial evidence in the record to support any such limitations. (Dkt. #10, at 20.) Accordingly, Wymer is not entitled to remand on this basis.

## III.  Vocational Expert's Testimony

Finally, Wymer argues that the ALJ erred by failing to comply with the mandate in SSR 00-4p to resolve any apparent conflicts between the VE's testimony and the information provided by the *Dictionary of Occupational Titles* ("DOT") and its companion publication, the Selected Characteristics of Occupational Titles ("SCO").[4] *See Overman v. Astrue*, 546 F.3d 456, 462-63 (7th Cir. 2008) ("[A]n ALJ has an 'affirmative responsibility' [under SSR 00-4p] to ask whether a vocational expert's evidence 'conflicts with information provided in the DOT'" and obtain "a reasonable explanation for the apparent conflict."); *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) ("The Ruling's language unambiguously sets out the ALJ's affirmative duty" to raise this issue at the hearing).

---

[4] As discussed further below, after Wymer filed her appeal in this case, the agency rescinded SSR 00-4p on January 6, 2025, and replaced it with SSR 24-3p (accessed online at https://www.ssa.gov /OP_Home/rulings/di/02/SSR2000-04-di-02.html). In particular, the significance of SSR 00-4p's rescission and replacement is addressed at the end of this opinion.

Specifically, Wymer contends that the ALJ failed to adequately resolve the apparent conflict between her RFC limitation to stand/walk for up to four hours in a workday and the light-work routing and mail clerk jobs identified by the VE, as light work "requires standing or walking, off and on, *for a total of approximately 6 hours of an 8-hour workday*."  SSR 83-10 (emphasis added).  The Commissioner's sole response is that Wymer forfeited this argument by failing to raise it during the administrative hearing.  While the court does not find waiver, it declines to remand on this issue because any error committed by the ALJ is harmless for the reasons set for below.

### A.  Waiver

Contrary to the Commissioner's contention, the record shows that Wymer raised the argument concerning SSR 00-4p in the brief she submitted to the ALJ after the first hearing *and* during the second, supplemental hearing.  Indeed, the ALJ expressly stated in his written decision that "[t]he claimant's representative argued the residual functional capacity (which provides for standing/walking 4 hours in an 8-hour workday) means the jobs provided cannot be performed because the Dictionary of Occupational Titles classifies the jobs as light and SSR 00-4p says the regulatory definition of light is controlling."  (AR 30.)  The ALJ further noted on the record during the second hearing that Wymer's counsel had submitted a brief objecting to the VE's testimony that the routing clerk position could be performed with a sit/stand option.  (AR 49.)  Therefore, Wymer did not forfeit her objection to the VE's testimony.  *See Leisgang v. Kijakazi*, 72 F.4th 216, 220 (7th Cir. 2023) ("[A] claimant must object to the VE's testimony or otherwise indicate that the testimony is unreliable during the administrative hearing (or after, in a posthearing brief) to preserve his objection.").  Moreover, "because SSR

9

00-4p imposes an affirmative duty on the ALJ to inquire into and resolve apparent conflicts, a claimant's failure to raise a possible violation of SSR 00-4p at the administrative level does not forfeit the right to argue later that a violation occurred." *Overman*, 546 F.3d at 463.  Thus, Wymer may raise this issue on appeal regardless of whether she objected to it during the hearing or in her post-hearing brief.  Although the Commissioner otherwise fails to address the merits of Wymer's objection to the VE's testimony, remand is not warranted for the reasons discussed below.

**B.  Testimony and ALJ Decision Concerning Sit/Stand Option**

At the first hearing, the ALJ asked VE Wenkman about her professional qualifications, to which Wymer's counsel raised no objection, and also asked her to alert him to any opinion that is inconsistent with the DOT or its companion publications.  (AR 117-18.)  The ALJ then posed a hypothetical asking Wenkman to opine about an individual capable of "less than light [work]" who is limited to "standing or walking for approximately 4 hours per 8-hour workday." (AR 120-21.)  In response, Wenkman identified three positions that "can be performed seated or standing," including routing clerk (105,000 positions in national economy), mail clerk (12,000 positions in national economy), and officer helper (107,000 positions "with a sit/stand option").  (AR 121.)  The ALJ then clarified that all three positions could be performed seated or standing with a sit/stand option at will, and questioned the VE at length about the methodology she used to arrive at the job numbers for these occupations.[5]  (AR 121-27.)  Then

---

[5] Wymer challenges the VE's methodology for arriving at the specific job numbers for each position for the first time in her reply brief, but arguments raised for the first time in a reply brief are forfeited because the other party does not have an opportunity to respond.  *Adams v. Bd. of Educ. of Harvey Sch. Dist. 152*, 968 F.3d 713, 716 (7th Cir. 2020).

the ALJ concluded his questioning by asking Wenkman if her testimony has been consistent with the DOT, and she responded that it had been with the exception that the DOT does not distinguish between different types of climbing, although the ALJ's hypotheticals did. (AR 128.) After asking the VE several questions about sedentary work, handling and fingering limitations, and accounting for part-time work (AR 129-33), Wymer's counsel asked the VE about her basis for asserting that the routing clerk job could be performed sitting or standing, and the VE responded that she had experience placing individuals in wheelchairs in that position, even without any accommodation under the Americans with Disabilities Act. (AR 134.)

At the second hearing, the ALJ primarily questioned VE Wenkman about her methodology for estimating the number of jobs available in the three occupations identified at the previous hearing, but he also noted that Wymer's counsel had objected to the VE's testimony that the routing clerk position could be performed either seated or standing. (*See* AR 46-58.) Wymer's counsel then elicited confusing testimony about how Wenkman arrived at the specific *number* of jobs available with a sit/stand option (AR 60-64),[6] before arguing that SSR 00-4p states that if an individual cannot stand for six hours, she cannot perform light work, as regulatory definitions of exertional levels are controlling. (AR 64-65.) The ALJ concluded the hearing by agreeing to look at SSR 00-4p before issuing his decision.

---

[6] Following this questioning, the ALJ correctly noted that Wenkman had (1) reduced only the number of *office helper* jobs by 50% to account for a sit/stand option and (2) made no such assumption with respect to the routing and mail clerk job numbers. (AR 63-64.) Nonetheless, to avoid relying on inaccurate information, the ALJ stated that he would eliminate the officer helper jobs from his step 5 analysis. (AR 64.)

### C. No Conflict Between VE Testimony and DOT

In his written decision, ALJ Freyberg wrote that "[p]ursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the *Dictionary of Occupational Titles*." (AR 30.)  More specifically, the ALJ explained that he "accept[ed] that [the routing and mail clerk] jobs can be performed within limitations of standing/walking for 4 hours in an 8-hour workday" based on the VE's testimony that:  (1) these jobs "can be performed seated or standing and that would reduce the amount of walking needed;" (2) even though the DOT "did not address the limitation of standing and walking for 4 hours of an 8 hour work day," she "relied upon her professional education, and 40 years' experience in job placement of individual[s] with disabilities;" and (3) "she has both observed those jobs being performed and has placed individuals in those jobs." (*Id.*; *see also* AR 120-28.)  Still, Wymer contends that the ALJ's decision inadequately resolves an *apparent* conflict between the VE's testimony and the DOT definition with respect to the availability of a sit/stand option in the routing and mail clerk positions.

However, Wymer's argument fails to establish a basis for remand for three, independent reasons.  *First*, the Seventh Circuit has considered VE testimony like that at issue here and found no apparent conflict with the DOT, despite failing to address the specific subject of a sit/stand option. *See Zblewski v. Astrue*, 302 F. App'x 488, 494 (7th Cir. 2008); *see also Lorenzo K. v. Comm'r of Soc. Sec.*, No. 23-cv-550, 2025 WL 938495, at *9 (N.D. Ind. Mar. 27, 2025) (noting same); *Rebecca A.T. v. Bisignano*, No. 24-cv-50015, 2025 WL 2380700, at *3 (N.D. Ill. Aug. 15, 2025) ("[S]ince the DOT does not specify a sit/stand limitation as to these three jobs, the Court does not find a conflict between the VE's testimony and the DOT."). *Second*, even if an apparent conflict existed, the ALJ reasonably explained that he resolved the conflict by

relying on the VE's training and experience, which Wymer's counsel did *not* contest at the hearing. *See Colleen F.W. v. Comm'r of Soc. Sec.*, No. 23-cv-493, 2025 WL 837815, at \*7 (N.D. Ind. Mar. 18, 2025) (finding the same with respect to directional reaching, which also is not addressed in the DOT); *see also Mitchell v. Kijakazi*, No. 20-2897, 2021 WL 3086194, at \*2 (7th Cir. July 22, 2021) ("ALJ may rely on an expert's testimony that provides 'more specific information' about a job than the Dictionary based on the expert's experience."). *Third*, and finally, any error the ALJ made in relying on the VE's testimony in this case is harmless because the ALJ would reach the same result on remand for the reasons explained below. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).

At the time of Wymer's hearings, SSR 00-4p was in effect. As noted above, however, SSR 00-4p was rescinded as of January 6, 2025, and replaced with SSR 24-3p, which no longer requires the ALJ to identify and obtain a reasonable explanation for any conflicts between the occupational evidence provided by VEs and the information in the DOT. *See* SSR 24-3p (accessed at https://www.ssa.gov/OP_Home/rulings/di/02/SSR2024-03-di-02.html) (In addition to being "time consuming," "the requirements of SSR 00-4p have led to unnecessary remands to resolve apparent conflicts that were not identified at the hearing when the VE testified."). Instead, SSR 24-3p now allows VEs to "provide evidence based on their professional experience and any reliable source of occupational information," as VEs "are in the best position to determine the most appropriate sources of data to support the evidence they offer." (*Id.*) Still, "[i]f the VS or VE uses a data source that defines exertion, education, or skill levels differently than our regulations, we expect the VS or VE to explain the difference." (*Id.*) And ALJs "are responsible for evaluating the VS or VE evidence within the context of the overall evidence in the claim." (*Id.*)

Not only did VE Wenkman fully explain her reliance on her professional experience and other sources of occupational information in determining that light work positions with sit/stand options existed in the national economy, but the ALJ thoroughly explained his decision after evaluating the vocational evidence and the record overall, as required by the new SSR 24-3p.

While SSR 24-3p did not come into effect until after the ALJ adjudicated Wymer's claim and Wymer filed her appeal in this court, the new ruling explicitly states that "[i]f a court reverses our final decision and remands a case for further administrative proceedings after the applicable date of this SSR, we will apply this SSR to the *entire* period at issue in the decision we make after the court's remand." (*Id.*, at n.1.)  Therefore, as other district courts in this circuit have found, "[g]iven SSA's rescindment of SSR 00-04p, an ALJ on remand would no longer be required to identify and resolve conflicts" in the way Wymer challenges, meaning any previous error in applying SSR 00-4p would be harmless. *Colleen F.W.*, 2025 WL 837815, at *8; *see also Luis L. v. King*, No. 24-cv-16585, 2025 WL 389333, at *4 (N.D. Ill. Feb. 4, 2025) (ALJ's failure to elicit further testimony or resolve conflicts between VE testimony and DOT was harmless based on rescission of SSR 00-4p); *Lorenzo K. v. Comm'r of Soc. Sec.*, No. 23-cv-550, 2025 WL 938495, at *9 (N.D. Ind. Mar. 27, 2025) (same); *Rebecca A.T.*, 2025 WL 2380700, at *3 n.1 (same).  Accordingly, because Wymer's arguments regarding the ALJ's findings at Step 5 are based solely on the requirements of SSR 00-04p, and further development of the record is not needed to satisfy SSR 24-3p, the court declines to remand this case for further administrative proceedings.

ORDER

IT IS ORDERED that the decision denying disability benefits to plaintiff April Wymer

is AFFIRMED.  The clerk of court is directed to enter judgment in favor the commissioner and

close this case.

Entered this 20th day of February, 2026.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge